PEOPLE v STAMMER

Docket No. 111458. Submitted June 15, 1989, at Grand Rapids.
    Decided August 9, 1989.
    Ronald L. Stammer pled guilty in the Cheboygan Circuit Court to
    third-degree criminal sexual conduct and fourth-degree crimi-
    nal sexual conduct. The trial court, Robert C. Livo, J., sen-
    tenced defendant to concurrent prison terms of seven to fifteen
    years for third-degree criminal sexual conduct and one to two
    years for fourth-degree criminal sexual conduct. Defendant
    appealed.
        The Court of Appeals *held:*
        1. The sentence imposed was not an abuse of discretion. The
    trial court's reasoning on the record complied with the proce-
    dure for departure from the sentencing guidelines.
        2. Defendant did not receive ineffective assistance of counsel.
    Affirmed.

1. CRIMINAL LAW — APPEAL — SENTENCING.
    A criminal defendant may request review of the exercise of a
    trial court's discretion in imposing sentence, but relief will be
    granted only where it is found that the trial court abused its
    discretion to the extent that the sentence shocks the conscience
    of the appellate court; an excessively severe sentence is one
    which far exceeds what all reasonable persons would perceive
    to be an appropriate social response to the crime committed
    and the criminal who committed it.

2. CRIMINAL LAW — ASSISTANCE OF COUNSEL.
    A defendant who claims ineffective assistance of counsel must
    show, first, that counsel's performance was deficient, that is
    that counsel was not functioning as the "counsel" guaranteed
    the defendant under the Sixth Amendment; an objective stan-
    dard of reasonableness is used to determine whether defense
    counsel meets this threshold and the defendant must overcome

REFERENCES
Am Jur 2d, Criminal Law §§ 469 *et seq.*, 538, 984, 985.
Validity of guilty pleas—Supreme Court cases. 25 L Ed 2d 1025.
Adequacy of defense counsel's representation of criminal client
    regarding guilty plea. 10 ALR4th 8.

the presumption that the challenged action might be considered sound trial strategy; second, the defendant must show that the deficiency was prejudicial to the defendant.

3. CRIMINAL LAW — APPEAL — GUILTY PLEAS — WAIVER.

A guilty plea effects a waiver of the right to invoke appellate review of those defects relating solely to the capacity of the state to prove the defendant's factual guilt, including a motion to suppress evidence and a potential insanity defense.

4. CRIMINAL LAW — APPEAL — GUILTY PLEAS — ASSISTANCE OF COUNSEL.

The Court of Appeals, in reviewing a claim of ineffective assistance of counsel arising out of a guilty plea, should focus upon whether the defendant's plea was made voluntarily and understandingly.

5. CRIMINAL LAW — APPEAL — ASSISTANCE OF COUNSEL — PRESERVING QUESTION.

A claim of ineffective assistance of counsel is ordinarily waived when the defendant has failed to preserve a postconviction evidentiary record because the appellate court is unable to evaluate the quality of trial counsel's assistance; an exception exists in instances where the deficiencies in representation are sufficiently detailed in the existing record so that the reviewing court is able to reach and decide the issue.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Joseph P. Kwiatkowski,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

*Ronald W. Powers,* for defendant on appeal.

Before: HOLBROOK, JR., P.J., and SAWYER and GRIFFIN, JJ.

PER CURIAM. Defendant pled guilty to third-degree criminal sexual conduct, MCL 750.520d; MSA 28.788(4), and fourth-degree criminal sexual conduct, MCL 750.520e(1)(b); MSA 28.788(5)(1)(b). We affirm.

Because of numerous objections raised by defendant to the presentence report, a lengthy eviden-

tiary hearing was conducted as part of the sentencing proceeding. Dr. James Findlay, defendant's treating psychologist, testified to his diagnosis of borderline personality disorder accompanied secondarily by symptoms of depression, anxiety, and alcohol abuse. Alcohol abuse was precipitated by trauma from an accident involving defendant that resulted in a fatality, and the effect of the alcohol was to reduce control of defendant's impulses. Defendant was not pedophilic, at least in the clinical sense, both because his child abuse was not his exclusive means of sexual gratification and because defendant's disorder was not compulsive. Dr. Findlay testified that it was "debatable" whether defendant was acting out "a drive or uncontrollable urge," but his ultimate conclusion was that defendant was not compulsive. Defendant's sexual involvement with young children was characterized in terms of isolated occurrences. In light of defendant's own history of being a victim of child sexual abuse, defendant's comprehension of his problems, and his personal remorse, Findlay believed that defendant could be successfully treated and rehabilitated by intensive psychotherapy and Alcoholics Anonymous meetings in a local, nonprison setting.

Defendant testified regarding his history of sexual abuse. He denied sexual involvement or desire with respect to a boy named Glenn and other persons in the early 1960s, but he admitted sexual involvement with a boy named Danny (Glenn's brother) in 1962, adding that he then submitted himself for psychological treatment. He married in December of 1967 and functioned sexually in a normal fashion. He denied having sexual relations on a daily basis with a person named Gerald (the victim in the fourth degree csc charge) during the summers of 1986 and 1987, but he admitted sexual

involvement with five persons, ages ten (the victim in the third degree CSC charge), fourteen, sixteen, eighteen, and twenty in this time period.

A police officer testified to uncorroborated statements made by other abuse victims that contradicted some of defendant's testimony. In one statement, it was alleged that defendant had sexually abused Glenn, an eight- or nine-year-old boy, in the early 1960s. The person named Gerald gave a statement alleging daily sexual relations with defendant during the last two summers. A report made in 1963 by the clinic treating defendant also indicated that defendant's perpetration of sexual abuse was more extensive than admitted in defendant's own testimony.

The trial court found that allegations in the presentence report concerning Glenn and Gerald should not be stricken, although defendant was permitted to insert his own version of the allegations.

The prosecutor made reference to a report by a limited-license psychologist employed by the Department of Corrections, in which defendant was diagnosed as pedophilic with a pessimistic outlook for successful treatment. Referring to the comments addressed by one victim's mother to the court and to the videotaped evidence of sexual acts involving defendant, the prosecutor urged that defendant was a predator who used his church involvement, his standing in the community, and his professed need to help fatherless boys in order to procure and manipulate victims into consenting to sexual involvement.

The sentencing court explicitly rejected rehabilitation as the object in structuring defendant's punishment, finding instead that the past history and involvement of three to five victims in the present recurrence of abuse rendered recidivism

likely; successful treatment of defendant's condition was deemed "questionable" although "possible." Although retribution was an acknowledged factor in sentencing, the court stated that its primary concern was to protect children from the likelihood that sexual abuse would recur. In defendant's favor, the court noted that defendant had no prior record and that his need to engage in abuse stemmed from an extensive history of mistreatment and sexual abuse suffered in defendant's own childhood. Because defendant pled guilty rather than subject his victims to a criminal trial, the court decided not to impose the maximum possible sentences. Defendant was sentenced to concurrent prison terms of seven to fifteen years for third-degree CSC and one to two years for fourth-degree CSC.

Defendant argues that his sentence is excessive and that reasons given for departure from the guidelines range (twenty-four to forty-eight months for third-degree CSC, zero to nine months for fourth-degree CSC) were inadequate.

The familiar *Coles* standard for a purportedly excessive sentence governs our review:

> The excessively severe sentence is one which far exceeds what all reasonable persons would perceive to be an appropriate social response to the crime committed and the criminal who committed it.
>
> * * *
>
> We next hold that an appellate court shall, upon a defendant's request in an appeal by right or in an appeal by leave granted, review a trial court's exercise of discretion in sentencing, but may afford relief to the defendant only if the appellate court finds that the trial court, in imposing the sentence, abused its discretion to the extent that it shocks the conscience of the appellate court. [*People v*

*Coles,* 417 Mich 523, 542-543, 550; 339 NW2d 440 (1983).]

Defendant's argument is that the court abused its discretion by not structuring a judicial response to defendant's crime that would have had, as its primary object, defendant's rehabilitation. However, rehabilitation is only one of many societal interests to be fulfilled in sentencing, *People v Girardin,* 165 Mich App 264, 267-268; 418 NW2d 453 (1987), and the sentencing decision, necessarily reflecting the weighing of different interests and trade-offs of competing interests, is appropriately an ad hoc determination, given the unique circumstances of the defendant and the crime. The wide latitude of discretion afforded the sentencing court in *Coles* reflects this.

In this case, whether or not defendant could be rehabilitated was vigorously disputed, and it is not the function of this Court to second-guess the lower court's decision to adopt one of two competing views, both of which were well developed and supported by appropriate documentation below. Given the entirety of the circumstances of defendant's personal background and his extensive involvement in sexual abuse, the determination of the court that societal protection was a more overriding concern and the resultant sentence appear to be well within the discretion contemplated by *Coles.* Our conscience is not shocked. The same on-the-record reasoning complied with the procedure for the departure from the guidelines. See *People v Fleming,* 428 Mich 408, 428; 410 NW2d 266 (1987).

Defendant makes a two-pronged argument that his legal representation during criminal proceedings below amounted to ineffective assistance of counsel: (1) failure of his defense attorney to inves-

tigate and pursue whether defendant was criminally responsible in light of his mental condition, and (2) failure to suppress evidence seized pursuant to a search warrant. Defendant did not seek an evidentiary hearing below on whether his attorney provided effective representation and has not moved for remand in this Court in order to make an appropriate record for review.

The standards applied in Michigan for evaluating whether counsel's performance meets constitutional standards were summarized in *People v Dalessandro,* 165 Mich App 569, 573-574; 419 NW2d 609 (1988), lv den 430 Mich 880 (1988):

> In *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the Supreme Court set forth the test to be used in reviewing claims of ineffective assistance of counsel. First, defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant under the Sixth Amendment. The objective standard of reasonableness must be used in determining whether defense counsel meets this threshold. *Strickland, supra,* pp 687-688. The defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.,* p 689. Second, the deficiency must be prejudicial to the defendant. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id.,* pp 691-692.
>
> Before *Strickland* was decided, Michigan followed the two-part test of *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976). According to *Garcia,* a defendant was denied the effective assistance of counsel and deserved a new trial where defense counsel did not perform at least as well as a lawyer with ordinary training and skill in the

criminal law, conscientiously protecting his client's interests undeflected by conflicting considerations. A defendant was also allowed relief where his trial counsel made a serious mistake, without which defendant would have had a reasonably likely chance for acquittal. *Garcia, supra,* pp 264-266. This Court has stated that *Strickland* is to be applied to claims of ineffective assistance of counsel brought under the United States Constitution, and *Garcia* is to be applied to claims brought under the Michigan Constitution, until the Michigan Supreme Court states otherwise. *People v Vicuna,* 141 Mich App 486, 498; 367 NW2d 887 (1985); *People v White,* 142 Mich App 581, 588-589; 370 NW2d 405 (1985), lv den 422 Mich 968 (1985). However, we now conclude that the *Strickland* test is the proper test to be applied in either instance, since *Strickland* was decided after *Garcia.*

We adhere to the view expressed in *Dalessandro* that the *Strickland* standard has displaced the standard in *Garcia.* See also *People v Hampton,* 176 Mich App 383, 386-389; 439 NW2d 365 (1989) (GRIFFIN, J., concurring). However, our result in this case would not change under the *Garcia* approach, even if we deemed it to be controlling.

In this case, ineffective assistance is raised in an effort to overturn plea-based convictions. Pursuant to *People v New,* 427 Mich 482; 398 NW2d 358 (1986), a plea effects a waiver of the right to invoke appellate review of those defects relating solely to the capacity of the state to prove the defendant's factual guilt, including a motion to suppress evidence, *id.,* p 494. The same principle would also appear to be inclusive of a potential insanity defense. Once the issue of the defendant's insanity has been raised at trial, its ultimate resolution is left for the finder of fact to decide. *People v Martin,* 386 Mich 407, 415, 422; 192 NW2d 215 (1971); *People v VanDiver,* 79 Mich App

539; 261 NW2d 78 (1977), lv den 411 Mich 864 (1981). Thus, insanity is a factual defense, not a matter implicating the authority of the state to bring the accused to trial, and a guilty plea precludes appellate review of this issue. See *New, supra.* In effect, defendant, by complaining of ineffective assistance, is seeking to get through the back door appellate relief that could not be obtained by directly invoking review on issues of evidentiary suppression and the insanity defense.

Accordingly, the standard for reviewing an ineffective assistance claim premised on counsel's performance in plea-taking proceedings is limited:

> Moreover, in *People v Johnson (After Remand),* 125 Mich App 76, 80; 336 NW2d 7 (1983), lv den 419 Mich 867 (1984), this Court, emphasizing that the ineffective assistance of counsel does not constitute a complete defense to a criminal prosecution but merely requires a new trial, stated that, "in reviewing a claim of ineffective assistance of counsel arising out of a guilty plea, the Court should focus upon whether the defendant's plea was made voluntarily and understandably." In this case, we detect no hint of involuntariness in defendant's plea, and defendant's own appellate brief acknowledges that the trial court "accepted the plea after meticulous compliance with the applicable Court Rule, MCR 6.101(F)," and that "the plea-taking procedure was a model of compliance with MCR 6.101(F)." [*People v Nunn,* 173 Mich App 56, 58-59; 433 NW2d 331 (1988).]

Ordinarily, when the defendant has failed to preserve a postconviction evidentiary record, a claim of ineffective assistance is waived because the appellate court is unable to evaluate the quality of trial counsel's assistance. See *People v Kesl,* 167 Mich App 698, 701-702; 423 NW2d 365 (1988).

An exception exists in instances where the deficiencies in representation are sufficiently detailed in the existing record so that the reviewing court is able to reach and decide the issue. *People v Bettistea,* 173 Mich App 106, 127; 434 NW2d 138 (1988).

In this case, the inadequacy of the existing record precludes any meaningful determination of whether defense counsel was effective. There is nothing to conclusively indicate that failure to assert an insanity defense or to move for suppression would have changed defendant's decision to plead guilty. Dr. Findlay, defendant's treating psychologist, had previously served as an expert witness regarding issues of criminal responsibility in several prior trials, thereby indicating his familiarity with issues of insanity, but his testimony at sentencing does not suggest that defendant's mental condition would provide the basis for such a defense. The videotape and other evidence obtained pursuant to the warrant was not shown to be an essential element for building the prosecutor's case against defendant. More significantly, we have no means of ascertaining whether the defense counsel considered and investigated these matters or whether he counseled defendant of their import with respect to his decision to plead. In the absence of this type of showing, we are unable to reach the conclusion that any professionally unreasonable conduct or omission prejudiced defendant by inducing a plea that was involuntary or lacking in understanding.

Affirmed.