PEOPLE v ARMENDAREZ

PEOPLE v GRIFFOR

Docket Nos. 115719, 115938. Submitted October 2, 1990, at Lansing. Decided March 18, 1991, at 9:45 A.M.

Gary A. Armendarez was convicted of delivery of less than fifty grams of cocaine and of possession with intent to deliver less than fifty grams of cocaine, and William J. Griffor, Jr., was convicted of delivery of less than fifty grams of cocaine and of possession of less than fifty grams of cocaine following a joint jury trial in the Bay Circuit Court, Eugene C. Penzien, J. Armendarez was sentenced to two consecutive prison terms of eight to twenty years, and was fined $25,000. Griffor was sentenced to concurrent prison terms of seven to twenty years for his delivery conviction and thirty-two months to four years for his possession conviction, and was fined $25,000 for the delivery conviction and $2,000 for the possession conviction. The defendants appealed, claiming critical evidence was the product of an unlawful search and seizure.

The Court of Appeals *held:*

The defendants' rights against unreasonable searches and seizures were not violated, but remand is required for resentencing in accordance with the principle of proportionality.

1. The investigative stop of the defendants' automobile was reasonable in light of the totality of the circumstances. The police had a particularized suspicion, based on reliable information supplied by a citizen-informant and later corroborated by the police officers' own observations, that the defendants had been engaged, were engaged, or were about to engage in criminal activity.

2. The defendants were seized within the meaning of the Fourth Amendment once their automobile was stopped by the police and they were ordered out of the automobile. The order to get out of the automobile was reasonable, given the police officers' suspicion of criminal activity by the occupants of the automobile.

3. Armendarez's lack of a proprietary or a possessory interest in the automobile deprived him of standing to challenge the search without a warrant of the interior of the automobile.

Conversely, Griffor's ownership and possession of the automobile provided him with standing to challenge the search of the automobile's interior. An automobile may be searched without a warrant, provided there is probable cause to believe that the automobile contains articles that the police officers are entitled to seize. In this case, the corroborated information provided by the informant, particularly the names of two of the suspects, along with the defendants' flight and attempts to hide objects within the automobile, gave the police probable cause to search the vehicle. The search of Armendarez's coat found within the vehicle was reasonable as a preventive measure to ensure that there were no weapons within the suspects' reach.

4. The trial court did not err in refusing to suppress evidence of a statement by Armendarez, before he was advised of his *Miranda* rights, that he had only sold "two joints." The statement was made in response to a request for identification. Such a request does not require the issuance of *Miranda* warnings.

5. The record does not support Griffor's claim of ineffective assistance of counsel at trial. There was no indication of deficient performance by counsel or of sufficient prejudice to Griffor.

6. *People v Milbourn,* 435 Mich 630 (1990), which was issued after sentencing in this case, instructs that departures from the sentencing guidelines, while permissible, are suspect and are subject to careful review on appeal. Because the trial court did not have the benefit of *Milbourn* when it departed from the guidelines in sentencing the defendants, remand for resentencing consistent with the principle of proportionality announced in *Milbourn* is necessary.

Affirmed, but remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Martha G. Mettee,* Assistant Prosecuting Attorney, for the people.

*Edward M. Czuprynski,* for the defendants.

Before: WAHLS, P.J., and DOCTOROFF and G. S. ALLEN,* JJ.

WAHLS, P.J. Following a joint trial before a jury

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

in the Bay Circuit Court, defendants Gary Andrew Armendarez and William John Griffor, Jr., were found guilty of delivery of less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv). The jury also found defendant Armendarez guilty of possession with intent to deliver less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv), and defendant Griffor guilty of possession of less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv). Defendant Armendarez was sentenced to two consecutive terms of eight to twenty years for the delivery and possession convictions and was fined $25,000. Defendant Griffor was sentenced to concurrent terms of seven to twenty years and was fined $25,000 for the delivery conviction, and thirty-two months to four years and a $2,000 fine for the possession conviction.

Defendants appeal as of right, claiming that the critical evidence against them was the product of an unlawful search and seizure, and that their sentences should shock this Court's conscience. Defendant Griffor also claims that he was denied effective assistance of counsel. We affirm defendants' convictions, but remand for resentencing in light of *People v Milbourn,* 435 Mich App 630; 461 NW2d 1 (1990).

According to the preliminary examination transcript, on April 13, 1988, Deputy Karen Gibson and Sergeant Miller of the Bay County Sheriff's Department were on a dinner break when Gibson received a radio transmission instructing her to telephone central dispatch. Deputy Gibson was informed by the dispatch operator that the department received a telephone call from an anonymous citizen-informant regarding a "dope deal" in the parking lot of a K mart store. The citizen-informant indicated that he was observing the drug

transaction in progress from a telephone booth, the participants were driving a black van and another vehicle, and two of the participants were defendant Armendarez and Bill Thorp. Gibson advised Miller of the reported drug transaction and the two officers proceeded to K mart in separate vehicles.

The officers entered the K mart parking lot and observed a black van and a silver Mercury automobile parked next to each another. As the officers approached, the vehicles drove away. Miller pursued the van, while Gibson circled behind the Mercury. Gibson observed the three male suspects in the vehicle turn around, observe the officer, and then appear to hide objects within the vehicle. Defendant Griffor was driving, defendant Armendarez was in the front passenger seat, and Thorp was in the back seat.

The vehicle was traveling at a speed of approximately two to three miles per hour. Gibson activated her overhead lights; however, defendant Griffor refused to stop. Finally, the officer forced the vehicle to stop, ordered the suspects out, and directed them to stand at the back of the vehicle until backup units arrived. Defendant Armendarez was argumentative and asked why they had been stopped. When Gibson informed defendant Armendarez she was investigating a "drug deal," defendant Armendarez responded, "I only sold him a couple joints."

Once the backup units arrived, the suspects were frisked for weapons and asked for identification. Defendant Armendarez stated his identification was in his coat located inside the vehicle. Gibson retrieved the coat from the front seat of the vehicle, removed and searched the wallet, and found it contained $1,732 as well as defendant Armendarez's identification.

Gibson subsequently searched the vehicle and found a plastic tray under the front passenger seat containing a green powdery substance, a pair of forceps on the drivetrain hump containing the tip of a small partially smoked marijuana cigarette, Zigzag cigarette rolling paper in the ashtray, three crumpled one-dollar bills on the passenger side floor, and a brown paper bag on the back seat containing a digital electronic scale, and twelve small orange plastic bags.

The suspects were taken to the police station where, upon realizing that he would be searched, defendant Armendarez reached into his pants and produced a bag containing more than forty grams of cocaine.

The circuit court did not conduct an evidentiary hearing on defendants' motion to suppress. Rather, in deciding defendants' motion, the court relied solely on the preliminary examination transcript, as stipulated to by the parties. The trial court denied defendants' motion, finding that the officers had probable cause to stop and search the vehicle and to detain the occupants. Where a sufficiently complete stipulation of facts is made, the trial court may decide a motion to suppress on the basis of the stipulation without conducting an independent hearing. *People v Futrell,* 125 Mich App 568, 571; 336 NW2d 834 (1983).

This Court will not reverse a denial or a grant of a motion to suppress evidence unless the trial court's decision is clearly erroneous. *People v Burrell,* 417 Mich 439, 448; 339 NW2d 403 (1983); *People v Russo,* 185 Mich App 422, 434; 463 NW2d 138 (1990); *People v Malone,* 180 Mich App 347, 355; 447 NW2d 157 (1989). Therefore, the trial court's decision will be affirmed unless, upon a review of the record, this Court is left with a

definite and firm conviction that a mistake was made. *People v Toohey,* 183 Mich App 348, 352; 454 NW2d 209 (1990), lv gtd 436 Mich 880 (1990).

The Fourth Amendment of the United States Constitution and the parallel provision in the Michigan Constitution guarantee the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. The Fourth Amendment is not a guarantee against all searches and seizures, but only against those which are unreasonable. *United States v Sharpe,* 470 US 675, 682; 105 S Ct 1568; 84 L Ed 2d 605 (1985); *People v Shabaz,* 424 Mich 42, 52; 378 NW2d 451 (1985), cert dis 478 US 1017 (1986); *People v Orlando,* 305 Mich 686, 690; 9 NW2d 893 (1943). Therefore, the touchstone of a reviewing court's Fourth Amendment analysis is always "the reasonableness in all the circumstances of the governmental invasion of the citizen's personal security." *Michigan v Long,* 463 US 1032, 1051; 103 S Ct 3469; 77 L Ed 2d 1201 (1983) (quoting *Terry v Ohio,* 392 US 1, 19; 88 S Ct 1868; 20 L Ed 2d 889 [1968]). The Michigan Constitution does not impose a higher standard of reasonableness for searches and seizures than that imposed by the federal constitution. *People v Nash,* 418 Mich 196, 214-215; 341 NW2d 439 (1983); *People v Ragland,* 149 Mich App 277, 281; 385 NW2d 772 (1986).

First, defendants challenge the initial stop of the vehicle, arguing that the investigative stop was not based on an individualized, articulable, and reasonable suspicion that criminal activity was being or had been committed. We disagree.

In order to justify an investigative stop, the police must have a particularized suspicion, based on objective observations, that the person stopped has been, is, or is about to engage in some type of

criminal activity. *Brown v Texas,* 443 US 47, 51; 99 S Ct 2637; 61 L Ed 2d 357 (1979); *Shabaz, supra,* pp 57-58. Whether or not the police conduct violates the Fourth Amendment must be evaluated in light of the totality of the circumstances with which the police were confronted. *Id.,* p 59.

The following considerations are pertinent to our constitutional analysis:

> 1. Reasonableness is the test that is to be applied for both the stop of, and the search of moving motor vehicles.
> 2. Said reasonableness will be determined from the facts and circumstances of each case.
> 3. Fewer foundation facts are necessary to support a finding of reasonableness when moving vehicles are involved, than if a house or a home were involved.
> 4. A stop of a motor vehicle for investigatory purposes. may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search is conducted by the police. [*People v Whalen,* 390 Mich 672, 682; 213 NW2d 116 (1973).]

Reasonable cause necessary to stop a motor vehicle need not arise from a police officer's personal observation, but may also be supplied by a citizen-informant if the information carries enough indicia of reliability to provide the officer with a reasonable suspicion that criminal activity is afoot. *Adams v Williams,* 407 US 143, 147; 92 S Ct 1921; 32 L Ed 2d 612 (1972); *People v Tooks,* 403 Mich 568, 576; 271 NW2d 503 (1978). On review, we examine three factors to determine whether the informant's tip carried enough indicia of reliability to supply the basis for reasonable cause to stop defendant Griffor's vehicle: (1) the reliability of the informant, (2) the nature of the information given

the police, and (3) the reasonableness of the suspicion in light of these factors. *Id.,* p 577; *People v Estabrooks,* 175 Mich App 532, 536; 438 NW2d 327 (1989).

In the instant case, the citizen-informant was unknown to the police and refused to identify himself during the disclosure of the information. However, information provided by an unknown citizen is not inherently unreliable where, as in this case, the citizen has personally observed suspicious activities and the information is sufficiently corroborated within a reasonable time by the police officer's own observations. *Tooks, supra; People v Spencer,* 154 Mich App 6, 11; 397 NW2d 525 (1986). Compare *People v Cabello,* 74 Mich App 78; 253 NW2d 363 (1977).

In the instant case, the record indicates that the information given by the citizen-informant was detailed and proved to be accurate. The citizen-informant gave the precise location where he witnessed the crime in progress and a detailed description of the vehicles involved, and named two of the suspects. The officers went to the location given and observed the vehicles described by the citizen-informant parked next to each other. As the officers approached, the suspects fled. While flight at the approach of police does not, by itself, support a reasonable suspicion to warrant an investigative stop, it is a factor to be considered in determining whether there were grounds to conclude that criminal activity was afoot:

> Certainly it is reasonable to conclude that the defendant[s'] flight away from the vehicle carrying the police officers might reasonably have heightened the officer's suspicion that the defendant[s] must have had something to hide and wished to avoid contact with the [police officers]. [*Shabaz, supra,* p 62.]

On the basis of our review of the record in this case, we conclude that the information supplied by the citizen-informant was of sufficient detail, accuracy, and reliability to give the officers a reasonable suspicion that criminal activity had occurred or was taking place. Additionally, the behavior exhibited by the suspects as the police approached further heightened the officers' suspicions. Therefore, we conclude that the investigative stop was reasonable in light of the totality of the circumstances.

Second, defendants argue that the officers lacked the requisite probable cause to order the defendants out of the vehicle. We disagree.

The Fourth Amendment applies to all seizures of persons, including seizures that involve only a brief detention, short of traditional arrest. *Shabaz, supra.* A person is "seized" within the meaning of the Fourth Amendment if, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Michigan v Chesternut,* 486 US 567, 573; 108 S Ct 1975; 100 L Ed 2d 565 (1988). Stopping an automobile and detaining its occupants constitutes a seizure, although the purpose of the stop is limited and the resulting prearrest detention is quite brief. *New York v Class,* 475 US 106, 115; 106 S Ct 960; 89 L Ed 2d 81 (1986).

Here, the suspect vehicle was stopped following a chase by a lone police officer. The officer was on notice that the suspects were possibly involved in a drug transaction. As the driver attempted to evade the police, the automobile's occupants appeared to hide items within the vehicle. Once the vehicle was halted, it was reasonable, under the circumstances, for the officer to order the suspects out of the vehicle and await the arrival of backup units. As the United States Supreme Court has

indicated, "[c]ertainly it would be unreasonable to require police officers to take unnecessary risks in the performance of their duties." *Terry, supra,* p 23. Because the initial stop was permissible, the additional intrusion, i.e., being ordered out of the car, was de minimis. Once the police make a valid investigative stop, the insistence by the police that the occupants remove themselves from the vehicle is not a serious intrusion upon the sanctity of the person, and it falls short of the level of even a "petty indignity." *Id.,* p 17. See also *Pennsylvania v Mimms,* 434 US 106, 111; 98 S Ct 330; 54 L Ed 2d 331 (1977); *People v Martinez,* 187 Mich App 160; 466 NW2d 380 (1991).

Next, defendants argue that the search of defendant Griffor's automobile was not valid because the search was incident to an unlawful arrest and was not supported by probable cause or exigent circumstances. We conclude that the officers had the requisite probable cause to support the validity of the search of the automobile.

Under the Fourth Amendment, a search occurs when an individual has a reasonable expectation of privacy in the area examined. *Katz v United States,* 389 US 347, 353; 88 S Ct 507; 19 L Ed 2d 576 (1952). Thus, before a person may attack the propriety of a search and seizure of property and receive the panoply of Fourth Amendment safeguards, that search or seizure must have infringed upon an interest of the person which the Fourth Amendment was designed to protect. *People v Mamon,* 435 Mich 1, 5-6; 457 NW2d 623 (1990). This initial inquiry regarding standing depends upon whether, in light of the totality of the circumstances, the defendant had an expectation of privacy in the object of the search and seizure, and whether that expectation is one that society is

prepared to recognize as reasonable. *People v Smith,* 420 Mich 1, 28; 360 NW2d 841 (1984).

Here, defendant Griffor's ownership and possession of the automobile in question is not disputed. Although "arcane" concepts of property law do not control the ability to claim the protections of the Fourth Amendment, *Rawlings v Kentucky,* 448 US 98, 105; 100 S Ct 2556; 65 L Ed 2d 633 (1980), defendant Griffor's possessory interest in the automobile is sufficient to give him a privacy interest that allows him to challenge the search. *Kremhelmer v Powers,* 633 F Supp 1145, 1148 (ED Mich, 1986). However, defendant Armendarez's standing to challenge the search is questionable.

Fourth Amendment rights are personal in nature and may not be asserted vicariously, but rather only "at the instance of one whose own protection was infringed by the search and seizure." *Smith, supra,* p 17 (quoting *Simmons v United States,* 390 US 377, 389; 88 S Ct 967; 19 L Ed 2d 1247 [1968]). In this case, defendant Armendarez asserted neither a proprietary nor a possessory interest in the automobile. Furthermore, defendant Armendarez made no showing of any legitimate expectation of privacy in the interior of the automobile. Thus, under the analysis set forth by the United States Supreme Court in *Rakas v Illinois,* 439 US 128; 99 S Ct 421; 58 L Ed 2d 387 (1978), we conclude that defendant Armendarez does not have standing to challenge the search of defendant Griffor's vehicle. Nevertheless, defendant Armendarez does have standing to object to the search of his personal effects in the car, namely, his coat. See *People v Sims,* 23 Mich App 194, 199-200; 178 NW2d 667 (1970), aff'd 385 Mich 621; 189 NW2d 41 (1971), cert den 405 US 1067 (1972).

It is well settled that an automobile may be

searched without a warrant under circumstances that would not justify the search of a home, provided there is probable cause to believe that the car contains articles that the officers are entitled to seize. See *South Dakota v Opperman,* 428 US 364, 367-368; 96 S Ct 3092; 49 L Ed 2d 1000 (1976); *People v Cruz,* 161 Mich App 238, 241-242; 409 NW2d 797 (1987). Whether probable cause exists depends on the information known to the officers at the time of the search. *People v Preston Williams,* 160 Mich App 656, 660; 408 NW2d 415 (1987).

Here, the corroborated information provided by the citizen-informant, particularly the fact that two of the suspects were specifically named, along with defendants' flight and attempts to hide objects within the vehicle, gave the police officers the requisite probable cause to search the vehicle. Under the circumstances of this case, we conclude that the lower court was correct in denying defendants' motion to suppress the evidence retrieved from the interior of defendant Griffor's vehicle. Furthermore, the search of defendant Armendarez's coat was permissible. It is reasonable for officers to take preventive measures to ensure that there are no weapons within a suspect's reach before allowing him to have access to items within the passenger compartment of a vehicle. *Michigan v Long,* 463 US 1032, 1047; 103 S Ct 3469; 77 L Ed 2d 1201 (1983); *Chimel v California,* 395 US 752, 763; 89 S Ct 2034; 23 L Ed 2d 685 (1969). See also *Michigan v Summers,* 452 US 692, 702; 101 S Ct 2587; 69 L Ed 2d 340 (1981); *Mimms, supra,* p 110.

Additionally, defendant Armendarez challenges the denial of his motion to suppress evidence of the statements he made to the police during the period he was detained outside the vehicle. Specifically, defendant Armendarez argues that he

should have been advised of his *Miranda*[1] warnings before being asked for identification and before being informed, in response to his inquiry, that he was stopped because of a report that he and his companions were involved in a "drug deal." Thus, defendant Armendarez argues, his responsive statement, "I only sold him two joints," should have been suppressed. We disagree.

When a person is asked to leave his vehicle and to produce identification, he has been seized within the meaning of the Fourth Amendment. *Miranda* warnings must be given to an individual, before interrogation, at the time he is in custody or otherwise deprived of his freedom of action in any significant way. *People v Hill,* 429 Mich 382; 415 NW2d 193 (1987). However, the simple asking of a defendant's name is not interrogation or an investigative question requiring the issuance of *Miranda* warnings. *People v Cuellar,* 107 Mich App 491, 493; 310 NW2d 12 (1981). Furthermore, defendant's statement that he only sold two joints was not in response to interrogation, but was "defendant's spontaneous reaction to being confronted by the police." *People v Pearson,* 157 Mich App 68, 73; 403 NW2d 498 (1987).

Next, defendant Griffor argues that he was denied effective assistance of counsel. Specifically defendant argues that his counsel's statement of hours (23.75 hours) evidences a lack of preparation and that his counsel failed to object to prejudicial trial testimony, to the admission of prejudicial evidence, and to misleading statements presented by the prosecuting attorney during closing arguments.

Defendant Griffor did not move for a new trial

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

or a *Ginther* [2] hearing in the trial court. Failure to so move usually forecloses appellate review unless the appellate record contains sufficient detail to support a defendant's claims; if so, review is limited to the record. *People v Marji,* 180 Mich App 525, 533; 447 NW2d 835 (1989).

Here, the record does not support defendant Griffor's contentions. Hindsight is insufficient to attack a criminal defendant's assistance of counsel. *People v Hedelsky,* 162 Mich App 382, 387; 412 NW2d 746 (1987).

The applicable standard for determining claims of ineffective assistance of counsel was articulated by the United States Supreme Court in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Tommolino,* 187 Mich App 14; 466 NW2d 315 (1991), and *People v Stammer,* 179 Mich App 432, 438-439; 446 NW2d 312 (1989). To establish such a claim, defendant must overcome the presumption that his attorney's performance was consistent with the constitutional guarantees of counsel assured under the Sixth Amendment.

> Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant . . . . From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. [*Strickland, supra,* p 688.]

In determining whether defense counsel met this

---

[2] *People v Ginther,* 390 Mich 436, 443; 212 NW2d 922 (1973).

threshold, an objective standard of reasonableness is applied, whereby the defendant bears the burden of proving that, in view of the totality of the circumstances, counsel's performance was deficient and so serious as to deprive the defendant of a fair trial. *Id.,* p 687. Here, after carefully reviewing the entire record, we conclude that defendant Griffor has failed to make the required showing of deficient performance or sufficient prejudice. Therefore, his claim of ineffective assistance of counsel cannot succeed.

Finally, defendants argue that their respective sentences should shock this Court's conscience. In *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), the Michigan Supreme Court abandoned the "shock the conscience" test articulated in *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), and held that a sentence is an abuse of discretion if it violates the principle of proportionality.

In the instant case, the sentencing guidelines recommended minimum sentences of 1½ to 5 years for defendant Armendarez and 1 to 3 years for defendant Griffor. The trial court departed significantly from the guideline recommendation in both instances primarily on the bases of protection of society, deterrence, and other grounds.

Under the principle of proportionality, our Supreme Court has instructed that departures from the guidelines, while permissible, are suspect and are subject to careful review on appeal. *Milbourn, supra,* p 660. Because the sentencing court did not have the benefit of the *Milbourn* decision, we are unable to apply the new standard of appellate review to defendants' sentences. Therefore, we remand this case to the trial court for resentencing consistent with the principle of proportionality set forth in *Milbourn.* We express no opinion whether the sentences imposed violate the princi-

ple of proportionality, but we add one caveat previously articulated by this Court in *People v Reddish,* 181 Mich App 625, 631; 450 NW2d 16 (1989):

> We are aware of the tragedy that drugs cause daily in our society. We acknowledge, also, that it was proper for the trial court to consider the protection of society and the deterrence of others in formulating defendant's sentence. *People v Fleming,* 428 Mich 408; 410 NW2d 266 (1987). However, the court [has] an additional obligation to tailor the sentences to [these] particular individual[s]. *People v Coles,* 417 Mich 523, 537; 339 NW2d 440 (1983).

See also *Milbourn, supra,* p 636:

> [A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.

Affirmed, but remanded for resentencing. We do not retain jurisdiction.