# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

LIONEL WRIGHT,

   Defendant-Appellant.

UNPUBLISHED
June 11, 2015

No. 319724
Wayne Circuit Court
LC No. 13-005810-FH

Before: HOEKSTRA, P.J., and MARKEY and DONOFRIO, JJ.

PER CURIAM.

Defendant appeals by right his convictions and sentences after a jury trial of carrying a concealed weapon ("CCW"), MCL 750.227, felon in possession of a firearm, MCL 750.224f, possession of a firearm during the commission of a felony, third offense ("felony-firearm"), MCL 750.227b, and possession with intent to deliver less than 5 kilograms of marijuana, MCL 333.7401(2)(d)(*iii*). The trial court sentenced defendant to concurrent sentences of one to five years' imprisonment for CCW, one to five years' imprisonment for felon in possession of a firearm and one to four years' imprisonment for possession with intent to deliver marijuana, to be served consecutively to a term of 10 years' imprisonment for felony-firearm. We vacate defendant's convictions and the judgment of sentence, and remand to the circuit court for any necessary proceedings consistent with the opinion.

## I. FACTS

On June 12, 2013, officers Bryan Bush and James Napier were on patrol in a scout car. While driving the wrong way on a one-way street in Detroit, Bush noticed a truck, faced in the correct direction but parked two feet from the curb. Defendant was standing outside the truck near the driver's window, apparently conversing with the driver seated in the truck. Bush stopped his scout car alongside the truck and exited. When he exited the scout car, he observed defendant turn away and stiffen his arm. Believing defendant was concealing something from him, Bush directed defendant to approach him and show his hand. Defendant complied, and when defendant turned toward him, Bush saw a bulge in defendant's front pants' pocket. Unsure of what the bulge was, and out of alleged concern for his safety, Bush met defendant at the front fender of the truck and conducted a patdown search. He recovered a loaded 9mm pistol from defendant's waistband. When defendant could not produce a permit to carry a concealed weapon, Bush arrested defendant, walked him to his scout car, and continued the patdown

-1-

search. Bush recovered from his search of defendant a grocery bag containing 43 individual bags of marijuana and $59 in cash.

Defendant testified on his own behalf. According to defendant, the officers approached him and asked him questions. When defendant tried to walk away, the officers detained him and the truck's driver. The officers searched both men, but they recovered nothing. Napier then walked into the home in front of which defendant was standing, which defendant stated was his brother's home, and after 10 minutes, came outside carrying a white grocery bag. Napier then whispered something to Bush, who handcuffed defendant. Napier then placed $59 in defendant's pocket. The officers released the truck's driver without further incident.


II. DISCUSSION

INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that trial counsel was ineffective for three reasons: (1) failing to move for a mistrial after the trial court struck Napier's hearsay testimony, (2) failing to call three witnesses, and (3) failing to move to suppress the pistol and marijuana as evidence obtained as the fruit of an illegal seizure. While trial counsel was not ineffective for the first two reasons defendant asserts, we find trial counsel was ineffective for failing to move to suppress the pistol and marijuana evidence and will only address that specific argument.

"A claim of ineffective assistance of counsel presents a mixed question of law and fact. This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011) (citations omitted). To preserve a claim of ineffective assistance of counsel, however, a defendant must move for a new trial or for a *Ginther*[1] hearing in the trial court. *People v Armendarez*, 188 Mich App 61, 73-74; 468 NW2d 893 (1991). Defendant did neither, so our review is limited to the appellate record. *Id*. at 74.

Michigan follows the standard established by the United States Supreme Court in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), to determine if a defendant has received ineffective assistance of counsel. See *People v Hoag*, 460 Mich 1, 5; 594 NW2d 57 (1999); *People v Pickens*, 446 Mich 298, 318; 521 NW2d 797 (1994). "Under this test, counsel is presumed effective . . . ." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A defendant asserting an ineffective assistance claim must overcome a strong presumption that counsel's tactics

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

constituted sound trial strategy. People v Sabin, 242 Mich App 656, 659; 620 NW2d 19 (2000), lv den 463 Mich 1010 (200). *People v Rodgers*, 248 Mich App 702, 715; 645 NW2d 294 (2001).

Defendant's third argument that counsel was ineffective for failing to seek to have the evidence, a gun and marijuana, found during Bush's patdown search suppressed because it was the fruit of an illegal seizure and subsequent search of defendant has merit. We agree with his analysis.

The Fourth Amendment of the United States Constitution and the parallel provision of the Michigan Constitution guarantee the right to be free of unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. Generally, searches and seizures without a warrant are unreasonable per se. *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). Still, "several categories of permissible warrantless searches and seizures are well established in Fourth Amendment jurisprudence, including exigent circumstance, searches incident to a lawful arrest, stop and frisk, consent, and plain view." *People v Barbarich (On Remand)*, 291 Mich App 468, 472-473; 807 NW2d 56 (2011) (quotation marks and citations omitted).

Officers are also permitted to approach an individual in a public area and ask questions. *People v Shabaz*, 424 Mich 42, 56-57; 378 NW2d 451 (1985). Such activity is permitted because it does not amount to a seizure under the Fourth Amendment. *Champion*, 452 Mich at 98. But an individual approached in such a manner remains free to ignore the officer and go on his way. *Id*. A seizure occurs only when "in view of all the circumstances, a reasonable person would have believed that he was not free to leave." *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). A seizure may happen by use of physical force or by submission to an officer's show of authority. *People v Lewis*, 199 Mich App 556, 559; 502 NW2d 363 (1993).

"In order for any police procedure to have constitutional search and seizure implications, a search or seizure must have taken place." *People v Frohriep*, 247 Mich App 692, 699; 637 NW2d 562 (2001). Bush's initial decision to stop his patrol car near the truck and exit was not a seizure under the Fourth Amendment. Bush had done nothing to indicate that the truck, its driver, or defendant were not free to leave. Rather, Bush's activity was akin to the simply permissible conduct of approaching individuals in public and engaging them in conversation, activity that does not amount to a seizure under the Fourth Amendment. See *Champion*, 452 Mich at 98; *Shabaz*, 424 Mich at 56-57.[2] But after observing defendant turn away, Bush ordered defendant to "turn around and come back to [Bush] and show [him] his hand . . . ." Defendant complied with this request. Once Bush commanded defendant to stop, show his hand, and walk toward him, a reasonable person would not believe he was free to leave. And, in fact, defendant submitted to Bush's show of authority. At that moment, defendant was seized under the Fourth Amendment. *Jenkins*, 472 Mich at 32; *Lewis*, 199 Mich App at 559. See also *People v Daniels*, 160 Mich App 614, 619; 408 NW2d 398 (1987) ("[I]t appears that for *Terry*[3] purposes a police

---

[2] Cf. *United States v See*, 574 F 3d 309, 313 (CA 6, 2009) (a seizure occurred where police "blocked [the defendant]'s car with his marked patrol car . . . .").

[3] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

approach for questioning on the street amounts to a consensual encounter, not a *Terry* stop, unless there exist intimidating circumstances leading the person to reasonably believe he was not free to leave or the person rebuffs the police officer by refusing to answer and walking away." (footnote added)).

"Police officers may make a valid investigatory stop if they possess reasonable suspicion that crime is afoot." *Champion*, 452 Mich at 98, citing *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968) (quotation marks omitted). See also *Barbarich*, 291 Mich App at 473 (an investigatory stop, also known as a *Terry* stop, is permissible "if a police officer has a reasonable, articulable suspicion to believe a person has committed or is committing a crime given the totality of the circumstances . . . ."). "Reasonable suspicion entails more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *Champion*, 452 Mich at 98, citing *United States v Sokolow*, 490 US 1; 109 S Ct 1581; 104 L Ed 2d 1 (1989). The officer's justification for the stop "must be based on an objective manifestation that the person stopped was or was about to be engaged in criminal activity as judged by those versed in the field of law enforcement when viewed under the totality of the circumstances." *Id*. "The detaining officer must have had a particularized and objective basis for the suspicion of criminal activity." *Id*. at 98-99. Once an officer has made a valid investigatory stop, the officer "may perform a limited patdown search for weapons if the officer has reasonable suspicion that the individual stopped for questioning is armed and thus poses a danger to the officer." *Id*. at 98.

While Bush's decision to stop his patrol vehicle appears to have been prompted by witnessing a civil infraction, this observation did not allow Bush to stop defendant who was merely standing next to the improperly parked truck which had someone in the driver's seat. Committing a civil infraction may provide justification for an officer's stop. See *People v Laube*, 154 Mich App 400, 407; 397 NW2d 325 (1986) ("[T]he civil infraction provided a legitimate reason to stop the defendant . . . ."). So although the civil infraction here was a parking violation, Bush had no reason to suspect that defendant who was standing in the street talking to the truck's driver was in any way responsible for how the truck was parked. Indeed, Bush acknowledged that up until the point defendant turned away with a stiffened arm; he did not suspect defendant of having committed any illegal act.[4] Nor could defendant's apparent unwillingness to engage in conversation with Bush justify an investigatory stop. While flight from officers may heighten an officer's general suspicions, it "does not alone supply the particularized, reasoned, articulable basis to conclude that criminal activity [is] afoot that is required to justify the temporary seizure approved in *Terry*." *Shabaz*, 424 Mich at 62-63. If it were, an individual who, like defendant here, chose to exercise his right to refuse to speak with

---

[4] We acknowledge that the United States Supreme Court has held that, in the context of a traffic stop, an officer effectively seizes everyone inside the vehicle, and that such a seizure of passengers is reasonable, even absent any particularized suspicion that these passengers are engaged in criminal activity. *Arizona v Johnson*, 555 US 323, 327; 129 S Ct 781; 172 L Ed 2d 694 (2009). Here, however, defendant was not a passenger inside the vehicle.

officers who had not yet seized him would be subject to a *Terry* stop for no reason other than choosing to exercise the right to walk away. *Id*. at 63.[5]

That leaves only the reason Bush articulated for supporting his investigatory stop: his observation that defendant appeared to be concealing something. In *Shabaz*, our Supreme Court rejected the notion that concealing an unknown object constitutes sufficient justification for an investigatory stop. In *Shabaz*, police seized a suspect after observing four relevant facts: (1) the defendant was seen at night in a high-crime area; (2) he was observed leaving an apartment where a number of weapons and narcotics arrests had been made; (3) "after looking in the direction of the unmarked police vehicle, the defendant was observed 'stuffing a [small] paper bag like under his vest' or 'in his pants'; and" (4) the defendant ran from police. *Shabaz*, 424 Mich at 60. Our Supreme Court found that *all* of these circumstances were insufficient to justify an investigatory stop. *Id*. at 60-64. With regard to the defendant's apparent act of concealing something from officers, our Supreme Court explained:

> Similarly, defendant's effort to conceal the paper bag in his vest, by itself, did not afford grounds for a stop. There was no evidence that the size or shape of the bag suggested that it contained a weapon. It may have contained money, liquor, food, jewelry, or any number of small items one might lawfully carry in a small bag and wish to conceal from view while walking down a darkened street in a high-crime area. It might, on the other hand, have contained unlawful contraband or an illegally concealed weapon. It is precisely because the officers could only speculate about the contents of the bag that they had no reasonable or articulable basis to conclude what its contents were.

---

[5] While some cases have found that evasive behavior is a factor that may be relied on when determining if a *Terry* stop is reasonable, in every case, other circumstances were present which raised a suspicion that illegal activity had occurred. See *Jenkins*, 472 Mich 26 (the defendant acted evasively after police officers initiated a LEIN check; police had been called to a loud party in a housing complex known for crime and drugs, another tenant had challenged the defendant's presence on her porch, the defendant attempted to leave, despite having given officers his identification, and several individuals invited him into their home to avoid further contact with the police); *People v Oliver*, 464 Mich 184; 627 NW2d 297 (2001) (the defendants avoided eye contact with police; the defendants matched the description of bank robbers who had committed a recently reported robbery within a quarter mile of where they were stopped, which was in an area where police believed the robbers had likely fled); *Champion*, 452 Mich 92 (the defendants fled from police; the defendants were in a high-crime area, one defendant, known by the officers as having prior drug and weapons convictions, held his hands in his pockets and refused several orders to remove them); *People v Yeoman*, 218 Mich App 406; 554 NW2d 577 (1996) (the defendants fled from police in their vehicle; the defendants were observed using a coin changer at a car wash after midnight, left several dollars' worth of quarters in the coin changer, and arrests had been made for defrauding coin changers the previous day). The present case is distinguishable: Other than defendant's somewhat evasive behavior, there were no other indices of criminal activity or that the officer might be in danger.

* * *

Because the police could only guess about what defendant was seeking to hide, their speculation did not provide a particularized suspicion of possessory wrongdoing, but only a generalized one. [*Id*. at 61.]

Bush explained that his belief defendant was concealing something was because he had observed defendant turn away and stiffen his arm. Still, Bush also acknowledged that he "didn't know if [defendant] was trying to hide something or if he had something under his arm or something under his shirt." Thus, while citing defendant's apparent act of concealing something as justifying his seizure, Bush did not even know if defendant were actually concealing anything at all. Nor did Bush have any particularized facts to Bush indicating that defendant would likely be hiding anything illicit. Bush admitted that before he ordered defendant to stop and show his hands, he had no reason to believe that defendant was engaged in any illegal activity, and specifically, in a narcotics transaction. Bush explained that in ordering defendant to stop, he was "just going off of the times that did happen a person had a weapon or was trying to hide or conceal some kind of contraband."

In sum, Bush did not know if defendant were hiding anything, and assuming he was, Bush "could only guess about what defendant was seeking to hide . . . ." *Shabaz*, 424 Mich at 61. Bush's assumption that defendant was concealing a weapon or contraband was merely speculation based on generalized knowledge. This "speculation did not provide a particularized suspicion of possessory wrongdoing, but only a generalized one." *Id*. Accordingly, Bush was "entirely without authority to confront . . . defendant and require him to submit to an investigatory stop and interrogation because, on the basis of what [he] had observed, [Bush] had no articulable or particularized grounds to suspect, reasonably, that defendant was, had been, or was about to be engaged in criminal activity." *Id*. at 62. Because Bush's seizure of defendant was unreasonable, "any evidence derived from that seizure must be suppressed as fruit of the poisonous tree." *Id*. at 65, citing *Wong Sun v United States*, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963). The pistol and marijuana were recovered because defendant complied with Bush's command that he stop—which also required he turn around-- and show his hand. Bush then observed a bulge in defendant's pocket, prompting him to conduct a patdown search of defendant. Because the gun and marijuana were the fruits of an illegal seizure, they should have been excluded from trial. *Shabaz*, 424 Mich at 62. Had this evidence been suppressed, patently, there could have been no valid charges against defendant.

But because trial counsel never sought to suppress the pistol and marijuana, the question now is whether trial counsel was ineffective for failing to do so. The failure to file a suppression motion is not ineffective assistance per se; defendant must still demonstrate that counsel's performance was objectively unreasonable. *Kimmelman v Morrison*, 477 US 365, 384; 106 S Ct 2574; 91 L Ed 2d 305 (1986). "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id*. at 375.

-6-

This Court has found that where counsel failed to seek suppression of evidence on the basis of a Fourth Amendment violation that likely would have succeeded, counsel's performance was unreasonable and required a new trial. *People v Thomas*, 184 Mich App 480, 481-483; 459 NW2d 65 (1990). In a somewhat analogous case, this Court found trial counsel ineffective for failing to invoke marital and confidential communication privileges to prevent the defendant's spouse from providing damaging testimony at trial. *People v Stubli*, 163 Mich App 376; 413 NW2d 804 (1987). Other courts have similarly concluded that where counsel fails to move for suppression of damaging evidence obtained in violation of the Fourth Amendment, counsel is ineffective. See, e.g., *Perez v State*, 284 Ga App 212, 216-217; 643 SE2d 792 (2007) (failure to seek suppression of stolen items discovered during an invalid search was ineffective assistance of counsel); *Northrop v Trippett*, 265 F3d 372 (CA 6, 2001) (counsel was ineffective for failing to seek suppression of narcotics, obtained in violation of the Fourth Amendment, where the narcotics were the only basis for the conviction).

Here, our legal analysis of defendant's Fourth Amendment rights indicates it reasonably likely that a motion to suppress would have succeeded and that he has overcome the strong presumption that counsel's conduct constituted sound trial strategy. *Sabin*, 242 Mich App 656, 659. The trial court did not have the opportunity to hear evidence or rule on the issue; however, the record in this case is more than adequate for this determination. Consequently, we see no need to remand for an evidentiary hearing. Trial counsel was unquestionably ineffective for failing to move to suppress evidence of the gun and marijuana as the fruit of an illegal search and seizure, and without this evidence, there is no evidence against defendant in support of any of these convictions.

Defendant raised several other arguments on appeal, but in view of our determination and resolution of his claim of ineffective assistance of counsel, we need not address them.

We vacate defendant's convictions and the judgment of sentence, and remand to the circuit court for any necessary proceedings consistent with the opinion. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Jane E. Markey
/s/ Pat M. Donofrio