PEOPLE v CUELLAR

Docket No. 52994. Submitted May 13, 1981, at Lansing.—Decided
     June 23, 1981.

     Annette M. Cuellar was convicted of larceny over $100 in the Bay
     Circuit Court, Eugene C. Penzien, J. Defendant appeals. *Held:*

     1. The arresting officer asked defendant her name without
     giving her the *Miranda* warnings. At trial she objected to the
     admission of testimony regarding her answer to the question.
     Asking a defendant her name is not interrogation requiring the
     giving of *Miranda* warnings.

     2. Her other claim of error was not preserved for appeal.
     Affirmed.

1. CRIMINAL LAW — INTERROGATION — CONSTITUTIONAL LAW — MI-
     RANDA WARNINGS.

     Asking a defendant her name is not interrogation requiring the
     giving of *Miranda* warnings.

2. APPEAL — PRESERVING QUESTION.

     Matters unobjected to at trial are not preserved for review,
     absent manifest injustice.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *George B. Mullison,*
Prosecuting Attorney, and *Thomas J. Rasdale,*
Assistant Prosecuting Attorney, for the people.

*Zimostrad, Allsopp, Wenzloff & Zimostrad, P.C.,*
for defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21A Am Jur 2d, Criminal Law §§ 793, 794, 974.
     What constitutes "custodial interrogation" within rules of Miranda
     v Arizona requiring that suspect be informed of his federal
     constitutional rights before custodial interrogation. 31 ALR3d
     565.
[2] 5 Am Jur 2d, Appeal and Error § 545.

Before: R. M. Maher, P.J., and Allen and Cy-
nar, JJ.

Per Curiam. On April 9, 1980, defendant was
convicted by a Bay County Circuit Court jury of
larceny over $100 in violation of MCL 750.356;
MSA 28.588. Defendant was sentenced to five
years probation, the first six months of which to be
spent in jail. Defendant appeals as of right.

At trial, the security manager for the K-mart
store located in Hampton Square Mall testified
that he apprehended defendant and a woman com-
panion for shoplifting on August 11, 1979. The
security manager further testified in detail con-
cerning how the women concealed a color televi-
sion set, curtains, and $282 worth of women's
clothing in an empty "hot cycle" box and in a
clothes hamper during the 45 minutes he observed
them. Other store employees testified to finding
the "hot cycle" which had been removed from its
box in the furniture department and to finding the
clothes hangers from the women's clothing in a
garbage pail inside the store in accordance with
the security manager's observations and testi-
mony. Defendant's companion paid only $13.48 for
the "hot cycle" box in which the color television
and the curtains were hidden. Defendant paid only
$10.88 for the clothes hamper in which the wom-
en's clothing was hidden.

Defendant's claims of error concern the testi-
mony of Officer Reynolds, the arresting officer.
Officer Reynolds testified that security manager
Wood's report gave defendant's name as Anna
Garcia and gave defendant's birth date. Officer
Reynolds indicated that defendant had no identifi-
cation with her and, when asked for her full name,
that she initially gave him the name Anna Garcia.
Defendant objected to this question and answer

claiming a *Miranda*[1] violation since defendant had not been given her rights prior to being asked for her name. The objection was overruled. A discussion outside the presence of the jury followed in which defense counsel indicated that, without waiving the prior *Miranda* objection, there would be no objection to the prosecution's asking Officer Reynolds if he subsequently learned "from another source" that defendant's name was Annette Cuellar and that defendant then admitted to him that Annette Cuellar was her name. The jury was then brought back into the courtroom and this testimony was taken without objection. On cross-examination, Officer Reynolds testified that Anna Garcia was defendant's maiden name.

Defendant's claim of a *Miranda* violation is without merit. The trial court was correct in holding that the simple asking of defendant's name was not interrogation or an investigative type question requiring the giving of *Miranda* rights. "[I]nterrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (Emphasis in original.) *Rhode Island v Innis,* 446 US 291, 302; 100 S Ct 1682; 64 L Ed 2d 297 (1980). Asking defendant her name does not substantively concern the offense charged and does not amount to interrogation. Therefore, the question falls outside the parameters of the *Miranda* decision. *Innis, supra, People v Scanlon,* 74 Mich App 186, 189; 253 NW2d 704 (1977).

Defendant's claim that the admission of Officer Reynolds's testimony that he learned of defendant's name "from another source" resulted in

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

reversible error is also without merit. Defendant did not object to this testimony at trial. The function of an appellate court is restricted to the test of questions which have been raised in the court below and thus saved for review. *Walls v Director of Institutional Services,* 84 Mich App 355; 269 NW2d 599 (1978), *Oakland County v Detroit,* 81 Mich App 308; 265 NW2d 130 (1978). The lack of objection precludes reversal absent manifest injustice. *People v Stinson,* 88 Mich App 672; 278 NW2d 715 (1979), MRE 103(a)(1) and (d). We find no manifest injustice.

At the conclusion of a lengthy discussion outside the presence of the jury, the following agreement was reached by the prosecution, defense counsel and court delineating the questions to be asked Officer Reynolds by the prosecution:

*"[The Prosecutor]:* First, did—did she have any identification. Number two, did she initially go by the name Anna Garcia. Number three, * * * did you learn from another source that her name was Annette Marie Cuellar and then what occurred after you learned that and then I assume you would testify that you went in the room and asked Annette and she spoke right up and then the fifth question would be, did she later give you the name Annette Marie Cuellar? And that would be the questions.

*"[Defense Counsel]:* If those are the questions I have no—without waiving the earlier objections * * * I would say I have no objection to them. I also have no objections to the form of the question which leads the officer because I think that's going to prevent us from getting to the question of a LEIN and alias and all this other business.

\*   \*   \*

*"The Court:* All right. Very good. Are you ready for the jury, then?

*"[Defense Counsel]:* Yes, we're ready.

*"The Court:* You may bring in the jury."

The jury was brought back into the courtroom and Officer Reynolds testified in response to prosecution questioning exactly as was agreed:

"*Q.* Now, when Annette—the defendant was in the security room, did she have any identification?

"*A.* Not that I recall.

"*Q.* And did she initially give you the name Anna Garcia?

"*A.* Yes, she did.

"*Q.* And did you subsequently learn from another source that her name was Annette—Annette Cuellar?

"*A.* Yes, I did.

"*Q.* And what happened after that point?

"*A.* What do you mean? After I—

"*Q.* You learned this—did you go back into the security room?

"*A.* Okay. I went back into the room and I stated, Annette, as a question, Annette? And she answered up yes.

"*Q.* Okay. The defendant answered up?

"*A.* Yes.

"*Q.* Okay. And did you subsequently learn that her name was—

"*A.* Actually—

"*Q.* —from her that her name was Annette Cuellar?

"*A.* She admitted to me that her name was Annette Cuellar.

"*[The Prosecutor]:* I have no further questions."

This testimony established that defendant, Annette Cuellar, was the person identified as Anna Garcia in security manager Wood's report.

The present case is distinguishable from the case of *People v Albert Thompson,* 101 Mich App 609; 300 NW2d 645 (1980), in which the trial court allowed the prosecutor, over objection, to question the defendant concerning his prior use of aliases for purposes of impeaching the defendant's credi-

bility. Here, defendant did not testify.[2] Additionally, the prosecution did not, as argued by defendant, imply that defendant was involved in other criminal conduct by some oblique reference to an alias of the defendant. The word "alias" was never mentioned at trial and the prosecution neither commented on defendant's use of her maiden name during opening argument nor during closing argument.

The evidence against defendant was overwhelming and the single unobjected-to statement in question was insignificant in leading to her conviction. *People v Bryan,* 92 Mich App 208, 218; 284 NW2d 765 (1979). Thus, even if Officer Reynolds's statement could be deemed error under *Thompson, supra,* the error was harmless and it would not warrant reversal. *Thompson, supra,* 614.

Affirmed.

---

[2] Since defendant did not testify, there was no attempt to impeach her credibility. Therefore, we need not address the issue of whether the use of an alias is "highly probative" of a witness's credibility. See *People v Pace,* 98 Mich App 714, 718; 296 NW2d 345 (1980), and *People v Dietrich,* 87 Mich App 116, 138-139; 274 NW2d 472 (1978), holding use of an alias highly probative. *Cf. People v Thompson, supra,* holding it is not.