COURT OF APPEALS

| | |
|---|---|
| PEOPLE OF THE STATE OF MICHIGAN, | UNPUBLISHED |
| | August 25, 2016 |
| Plaintiff-Appellee, | |
| v | No. 322198 |
| | Wayne Circuit Court |
| RICKY ALONZO LEWIS, | LC No. 13-009985-FC |
| Defendant-Appellant. | |

Before: BECKERING, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

A jury convicted defendant, Ricky Lewis, of two counts of armed robbery, MCL 750.529, carjacking, MCL 750.529a, unlawfully driving away an automobile (UDAA), MCL 750.413, assault with intent to do great bodily harm less than murder, MCL 750.84, felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 13 to 30 years each for the armed robbery and carjacking convictions, one to five years for the UDAA conviction, 2 to 10 years for the assault with intent to do great bodily harm conviction, and one to four years for the felonious assault conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm defendant's convictions, and remand for further proceedings.

I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from a carjacking and robbery that occurred between 12:30 a.m. and 12:45 a.m. on August 21, 2013. Lori Watson and Jack Gibson were talking in Watson's 2007 Saturn, which was parked in the driveway of Gibson's condominium near downtown Detroit. The driveways and garages in the condominium complex are located at the back of the housing units. Three men approached the vehicle. One of the men, whom Watson and Gibson both identified as defendant, went to the driver's side, opened the door, grabbed Watson by her shirt, put a gun to her head, and ordered her out of the car. When Watson tried to pull away from the man, he struck her in the head with the gun. The other two men approached the passenger-side door and pulled Gibson out of the car. The three men then drove away in the vehicle. Two months later, Watson viewed two live corporeal lineups, with five individuals in each lineup. She did not identify anyone in the first lineup, but in the second lineup she identified defendant as the man who held the gun to her head and pulled her out of the car. Gibson did not attend a

-1-

lineup, but he identified defendant in court at the preliminary examination. The defense theory at trial was that Watson's and Gibson's identification of defendant was not reliable.

Following his jury trial and conviction, defendant filed a timely claim of appeal with this Court and a motion to remand for a *Ginther*[1] hearing limited to the issue of whether trial counsel was ineffective for failing to present an alibi defense. Based on evidence presented at the hearing, the trial court found that defense counsel reasonably declined to present an alibi defense as a matter of strategy so that he could focus instead on challenging the victims' identification of defendant as a perpetrator of the carjacking.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises claims of ineffective assistance of counsel through both his appellate counsel and in a Standard 4 brief.[2] "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc,* 465 Mich 575, 579; 640 NW2d 246 (2002). We review questions of constitutional law de novo, and a trial court's findings of fact for clear error. *Id.* Although we granted defendant's motion to remand for a *Ginther* hearing, the hearing was limited to the issue of whether trial counsel was ineffective for failing to present an alibi defense. Consequently, our review of whether trial counsel provided ineffective assistance by failing to obtain discovery, present an expert witness, or object to the admission of identification evidence "is limited to mistakes that are apparent on the record." *People v Mack,* 265 Mich App 122, 125; 695 NW2d 342 (2005).

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Carbin,* 463 Mich 590, 600; 623 NW2d 884 (2001). Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. *Id.*; see also *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] A "Standard 4" brief refers to a brief filed by an indigent criminal defendant on his or her own behalf pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4.

# 1. ALIBI

Defendant first argues that the trial court erred by not finding that his trial counsel was ineffective for failing to present an alibi defense through the testimony of defendant's brother, girlfriend, and mother, and through cellular telephone records. Defendant argues that the alibi testimony and the cell phone records would have placed him at a location seven miles from the crime scene at the time of the offense. He further argues that the trial court's finding is clearly erroneous because counsel was unable to articulate any particular reason for not calling the alibi witnesses.

Defense counsel has wide discretion as to matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). Counsel's decisions concerning the choice of witnesses or theories to present are presumed to be exercises of sound trial strategy. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). "Ineffective assistance of counsel may be established by the failure to call witnesses only if the failure deprives defendant of a substantial defense." *People v Julian*, 171 Mich App 153, 159; 429 NW2d 615 (1988). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo,* 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

> Because there are countless ways to provide effective assistance in any given case, in reviewing a claim that counsel was ineffective courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. That inquiry is objective; although the reviewing court may not engage in a post hoc rationalization of the counsel's decision-making that contradicts the available evidence, neither may courts insist that counsel confirm every aspect of the strategic basis for his or her actions. Accordingly, a reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission. [*People v Gioglio* (*On Remand*), 296 Mich App 12, 22-23; 815 NW2d 589 (2012), remanded for resentencing, 493 Mich 864 (quotation marks and citations omitted).

At the *Ginther* hearing, defendant's brother, Juandrell Lewis, testified that he and defendant played basketball at the Diggs housing complex on the evening of the robbery. When they were finished playing, they went to Juandrell's house, stopping to pick up a pizza along the way. Juandrell testified that he lived on Christy Street on Detroit's eastside, approximately seven miles from the downtown location where the carjacking occurred. He said that, apart from defendant's quick (7 to 10 minutes) errand to a neighborhood store for cigarettes, he and defendant were together playing a video game from 11:30 p.m. until Juandrell went to bed at around 1:00 a.m. or 2:00 a.m. Defendant's girlfriend and mother testified that they were not with

defendant at the time the robbery occurred, but both said they exchanged text messages with him.

Defense counsel testified at the *Ginther* hearing that he did not know why he did not present an alibi defense, but said that he routinely presents favorable evidence if it exists. He denied there were any specific circumstances pertaining to defendant's case that created an exception to his usual practice.

Based on the evidence presented at the *Ginther* hearing, the trial court inferred that trial counsel had a strategic reason for not presenting the alibi witnesses and alibi defense, notwithstanding that counsel could not or would not articulate that reason. The trial court also found that counsel based his decision on sound reasons; namely, that the alibi testimony was not as strong as defendant believed and that the presentation of a weak alibi defense would undermine the misidentification defense.[3]

Defendant argues that the trial court's finding regarding ineffective assistance is clearly erroneous because counsel was unable to articulate any particular reason for not calling the alibi witnesses. From our review of the record, we conclude that the trial court did not clearly err in "affirmatively entertaining the range of possible reasons" supported by the available evidence that counsel may have had for proceeding as he did, and in concluding that defense counsel's conduct fell within the range of reasonable professional conduct "in light of all the circumstances." See *Gioglio*, 296 Mich App at 22-23 (quotation marks and citation omitted). Juandrell admitted that he did not recall the date or the day of the week that the robbery occurred. He explained that he previously determined from his cell phone messages that the robbery occurred the night he and his brother had played basketball at the Diggs complex. However, he no longer owned that cell phone, so he could not corroborate his explanation. Similarly, an affidavit Juandrell submitted on defendant's behalf did not specify the date on which he was with defendant, only that they were together "on the night in question." However, Juandrell's admission that he frequently socialized with defendant weakens his assertion that he remembered clearly the events of "the night in question," especially considering that the "night in question" was two months before Watson identified defendant as a participant in the carjacking and was otherwise unremarkable. Further, defendant's girlfriend and mother admitted that they were not with defendant at the time of the robbery and carjacking. The totality of these circumstances supports the trial court's finding that, because the vague testimony of defendant's family members and girlfriend would constitute a factually anemic defense that might distract

---

[3] We reject defendant's claim in his second supplement to his Standard 4 brief that the trial court exceeded the scope of this Court's remand order when it made findings regarding whether the evidence presented at the *Ginther* hearing supported a claim that trial counsel was ineffective. This Court's remand order directed the trial court to "hear *and decide* the matter," and further directed the trial court to "*make findings of fact and a determination on the record.*" *People v Lewis*, unpublished order of the Court of Appeals, entered August 14, 2015 (Docket No. 322198) (emphasis added).

the jury from the stronger defense of misidentification, trial counsel was not deficient in failing to pursue an alibi defense.

Defendant also contends that his cell phone records would have provided an alibi. Trial counsel denied remembering anything relevant to his decision not to use the cell phone records in his defense. Nevertheless, the prosecutor testified at the *Ginther* hearing that he had examined the cell phone records and found no correlation between defendant and the phone. Defendant presented no evidence that the cell phone records were consistent with his known activities, and the cell phone was no longer available for examination. These facts support the trial court's finding that counsel's failure to use the cell phone records was also a reasonable strategic decision.

In sum, we conclude that the trial court did not clearly err in determining that counsel's decision against presenting an alibi defense and using defendant's cell phone records were matters of trial strategy. Accordingly, we conclude that defendant has failed to overcome the presumption that counsel's strategy was sound. *Davis*, 250 Mich App at 368.

## 2. FAILURE TO OBTAIN DISCOVERY OR PRESENT EXPERT TESTIMONY

Defendant contends in his Standard 4 brief that trial counsel was ineffective for failing to obtain photographs of the live corporal lineup at which Watson identified defendant. He contends that this failure cost him the opportunity to undermine Watson's identification by using the photographs to support expert testimony that the lineup was unfairly suggestive. "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v Horn,* 279 Mich App 31, 39; 755 NW2d 212 (2008).

We cannot conclude from the record before us that trial counsel's failure to obtain the photographs at issue is related to counsel's decision not to present expert testimony on identification. Before trial, defendant moved for appointment of an expert witness in the area of eyewitness identification, specifically with regard to the victims' ability to observe the perpetrator during the offense and given scientific research on the unreliability of cross-racial identification.[4] The trial court denied the motion, but defendant subsequently indicated that he had retained a witness at his own expense. Although the trial court planned to hold a *Daubert*[5] hearing to determine the admissibility of the expert's testimony, such hearing became unnecessary when defense counsel indicated that he did not intend to call the expert after all.

---

[4] In an apparent attempt to diffuse a claim by defendant that Watson's and Gibson's identifications of defendant were compromised by the difficulties of cross-racial identification, the prosecutor questioned the witnesses regarding their familiarity with African-American people; they both testified that they regularly worked with and interacted with African-Americans.

[5] *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579, 589; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

-5-

Trial counsel's initial request for a court-appointed expert witness was unrelated to defendant's contention on appeal that the lineup was unfairly suggestive. Nor did counsel indicate that the expert's analysis of the identification issue required photographs of the lineup. It was not until sentencing that defendant first associated expert testimony with the lineup photographs. Further, defendant has not submitted an affidavit from the proposed expert witness stating the substance of the opinion he or she would have given if defense counsel had called him or her to testify, with or without the photographs. Thus, without any factual basis that defense counsel's alleged error deprived defendant of a substantial defense, there is no basis for finding that either prong of the ineffective assistance of counsel analysis was satisfied. *Carbin*, 463 Mich at 600; *Hoag*, 460 Mich at 6.

Defendant cites other instances that purportedly demonstrate defense counsel's failure to obtain pertinent, discoverable materials and to present evidence properly.[6] However, ineffective assistance claims cannot be based on allegations of general incompetence without a showing of resulting prejudice, and defendant fails to explain how he was prejudiced by these alleged errors and omissions. Accordingly, these claims do not satisfy the two-prong test of ineffective assistance of counsel, and do not require further analysis.

## 3. IDENTIFICATION EVIDENCE

Defendant also contends in his Standard 4 brief that the procedures by which the victims identified him as a perpetrator of the carjacking were unfairly suggestive, and that defense counsel rendered ineffective assistance by failing to move to suppress the resulting identification testimony. Because defendant did not challenge the victims' pretrial identification of him, nor object to admission of the identification testimony at trial, this issue is unpreserved. Accordingly, our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the plain error standard, defendant must show (1) an error, (2) that is plain (i.e., clear or obvious), (3) that affected his substantial rights by causing him prejudice, and (4) that "resulted in the conviction of an innocent person or seriously affected the fairness, integrity or public reputation of judicial proceedings." *People v Borgne*, 483 Mich 178, 196-197; 768 NW2d 290 (2009) (quotation marks and citation omitted). Because defendant's *Ginther* hearing was limited to the issue of trial counsel's failure to offer an alibi defense, our review of defendant's related ineffective

---

[6] With regard to discoverable material, defendant complains that his counsel failed to obtain and be prepared to deal with a forensic scientist's laboratory report. We first note that defense counsel successfully moved to exclude the report at issue because the prosecution did not timely provide it to the defense prior to trial. Additionally, although the excluded laboratory report would have identified another suspect as the contributor of DNA evidence found inside Watson's vehicle, defense counsel elicited from the forensic scientist that the only available DNA did not match defendant, and elicited from Detective Saunders that there was no DNA evidence linking defendant to the crime. Given that there were three perpetrators involved in the offense, the fact that another person's DNA was found at the crime scene would not be dispositive of defendant's involvement.

assistance of counsel claim is limited to errors apparent from the record. *Mack*, 265 Mich App at 125.

Defendant first contends that the live corporeal lineup was unfairly suggestive because he was the only participant wearing a hooded sweatshirt (a "hoodie"), and Watson's assailant was also described as wearing a hoodie. We disagree.

"A lineup can be so suggestive and conducive to irreparable misidentification that it denies an accused due process of law." *People v Hornsby,* 251 Mich App 462, 466; 650 NW2d 700 (2002). To successfully challenge an identification on due process grounds, a criminal defendant " 'must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification.' " *People v Williams,* 244 Mich App 533, 542; 624 NW2d 575 (2001), quoting *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). "If a witness is exposed to an impermissibly suggestive pretrial identification procedure, the witness' in-court identification will not be allowed unless the prosecution shows by clear and convincing evidence that the in-court identification will be based on a sufficiently independent basis to purge the taint of the illegal identification." *People v Colon,* 233 Mich App 295, 304; 591 NW2 692 (1998).

The photograph depicting the lineup at issue shows five African-American men of similar height, build, hair length, hairstyle, complexion, and age, all casually dressed in unremarkable street attire. Defendant is wearing the clothes he had on when police arrested him and is the only participant wearing a hoodie. Defendant contends that the hoodie made the lineup unfairly suggestive because Watson's assailant was also described as having worn a hoodie. However, a hoodie is not an uncommon or unique article of clothing, and the description of the hoodie worn by the assailant differed from the hoodie worn by defendant in the lineup. According to Watson, her assailant was wearing a dark grey sweatshirt, whereas in the lineup, defendant was wearing a light or cream-colored sweatshirt. Defendant's mere appearance in the lineup wearing a common article of clothing of the same type worn by Watson's assailant was not "so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Williams,* 244 Mich App at 542. Because the lineup procedure was not unduly suggestive, there was no plain error. *Borgne*, 483 Mich at 196-197. Because there was no plain error, a motion challenging the lineup as unfairly suggestive likely would have been futile. Consequently, defendant's claim that defense counsel provided ineffective assistance by not challenging the lineup or the admission at trial of identification testimony arising from the lineup must fail. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (noting that counsel is not ineffective for failing to "advance a meritless argument or raise a futile objection").

Defendant also contends that Gibson's identification at the preliminary examination should have been suppressed because defendant was wearing prison garb when he appeared at the examination. In *Colon*, we agreed with the defendant "that the preliminary examination was a suggestive atmosphere in that defendant was placed in the courtroom in prison garb." *Colon*, 233 Mich App at 305. However, we determined that the prosecution "showed, by clear and convincing evidence, that the victim's identification of defendant had a sufficiently independent basis and was not based on any suggestiveness surrounding the preliminary examination." *Id*. The victim was able to observe the perpetrator for at least five minutes in a room where the lights

-7-

were on, the victim's description of the perpetrator was an accurate description of the defendant, and less than two weeks had passed between the time of the assault and the preliminary examination. *Id*. Thus, we concluded that, "[u]nder the totality of the circumstances, defendant has failed to show that there was a substantial likelihood of misidentification." *Id*.

In this case, when Gibson saw defendant in the courtroom at the preliminary examination, defendant was wearing prison garb, but he was not seated at the defense table. Gibson testified that he observed the perpetrator's face closely during the incident, and that he recognized defendant from his face, not from his prison garb. Given the totality of the circumstances, it is neither clear nor obvious that Gibson lacked an independent basis for identifying defendant. Accordingly, defendant has failed to establish a plain error affecting his substantial rights. *Borgne*, 483 Mich at 196-197. Absent a showing of plain error, defendant's related claim that trial counsel was ineffective for failing to challenge Gibson's identification at the preliminary examination or object to Gibson's identification testimony at trial must also fail because defendant cannot establish a reasonable probability that any such motion or objection would have affected the outcome of the proceedings. *Carbin*, 463 Mich at 600.

To summarize, defendant has not overcome the strong presumption that his trial counsel's decisions against calling his brother, girlfriend, or mother as alibi witnesses and entering into evidence his cell phone records were sound trial strategies under the circumstances. See *Carbin*, 463 Mich at 600. Nor do we find that defendant established the factual predicate to sustain a claim of ineffective assistance based on defense counsel's failure to obtain photographs of the lineup or the testimony of an expert witness as to the suggestiveness of the lineup. *Carbin*, 463 Mich at 600. Finally, finding no plain error in the identification procedures at issue, we find no error in defense counsel's failure to challenge the victims' identifications or admission of identification testimony into evidence at trial. *Ericksen*, 288 Mich App at 201.

### 4. CUMULATIVE ERROR

Because we do not find merit to defendant's various claims of error, we find no cumulative error warranting reversal. *People v Unger*, 278 Mich App 210, 261; 749 NW2d 272 (2008) (stating that cumulative error can warrant reversal even where the individual errors would not).

### B. ALIAS

Defendant further contends in his Standard 4 brief that the trial court erred in permitting a witness to testify that defendant previously used an alias. Contrary to defendant's assertion, the record does not show that defense counsel objected to the testimony at issue. Accordingly, the issue is unpreserved and our review is limited to plain error. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014).

In *People v Thompson,* 101 Mich App 609, 613; 300 NW2d 645 (1980), we explained that it is improper for a prosecutor to inquire about a defendant's use of an alias on some past, unspecified occasion because this would improperly permit an inference of nonspecific misconduct and, thus, could be highly prejudicial. On the other hand, we have found that the introduction of a defendant's alias was not unfairly prejudicial where the defendant did not

testify and the prosecutor did not imply "that defendant was involved in other criminal conduct by some oblique reference to an alias of the defendant." *People v Cuellar*, 107 Mich App 491, 496; 310 NW2d 12 (1981).

In the instant case, after Police Sergeant Patrick Saunders identified defendant, the prosecutor questioned Saunders as follows:

> *Q*. Now, did you also come to know him by another name?
>
> *A*. I did.
>
> *Q*. And what was the other name?
>
> *A*. Ricki Webb.
>
> *Q*. So, at this point, he has two names, is that fair?
>
> *A*. That is fair.

On cross-examination, defense counsel further questioned Saunders regarding the name Webb:

> *Q*. You said that you had a name of Ricki Webb, correct, for Mr. Lewis as well?
>
> *A*. Yes, sir.
>
> *Q*. And that stems from a misdemeanor incident, correct?
>
> *A*. I don't recall what it stem [sic] from. The name – I got the name from a criminal history check.
>
> *Q*. Were you aware that that was from a loitering ticket from standing outside of a house?
>
> *A*. I do not. The criminal history didn't list the – what the exact charge was. It's a general charge they put on there.
>
> *Q*. Okay. But it certainly wasn't from any felony convictions, correct?
>
> *A*. To my knowledge, no.

As the above excerpts from the trial transcript illustrate, the prosecutor elicited that Saunders knew a second name for defendant, but did not question Saunders regarding the source of his knowledge, or speculate from the alias that defendant was "involved in other criminal conduct." *Cuellar*, 107 Mich App at 496. It was defense counsel who elicited that Saunders obtained the alias from a criminal history check, but also that the criminal history check did not involve a felony. The brief references to the alias, the fact that it was defense counsel, not the prosecutor, who associated the alias with a criminal history, and that defense counsel elicited Saunders's admission that the alias was not associated with a felony history, all weigh against the

conclusion that reference to an alias was unfairly prejudicial. See *Id*. at 495-496. Accordingly, we conclude that, any error that may have occurred did not affect the outcome of the proceedings, result in the conviction of an innocent person, or seriously affect the fairness, integrity or public reputation of the proceedings. *Borgne*, 483 Mich at 197.

## C. SENTENCING ISSUES

## 1. GUIDELINES SCORING

Defendant submits that sufficient evidence did not support the scoring of offense variables 3, 4, 10, and 14 of the sentencing guidelines. We disagree. Under the sentencing guidelines, we review the circuit court's factual determinations, which must be supported by a preponderance of the evidence, for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review the circuit court's interpretation and application of the statutory sentencing guidelines de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

The trial court assessed 10 points each for offense variable (OV) 3 (physical injury to victim), OV 4 (psychological injury to victims), and OV 14 (offender's role). OV 3 is properly scored at 10 points where "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). Watson testified that defendant struck her in the head with his gun during the offense, and that she "had a huge, massive I guess contusion on my head . . . like a golf ball . . . ." She further testified that, after initially returning home, she went to a nearby hospital for treatment. Watson's testimony that she actually received treatment at a hospital for a head injury involving sufficient trauma to cause a large protrusion or swelling is sufficient to establish by a preponderance of the evidence that she sustained a bodily injury requiring medical treatment. Thus, the trial court did not clearly err in assessing 10 points for OV 3.

OV 4 is properly scored at 10 points where "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). In determining whether 10 points should be scored, the fact that the victim has not sought treatment is not conclusive. MCL 777.34(2). Watson described the emotional impact caused by the offense, including her extreme fear during the offense and her continuing feelings of fear afterward. She stated that she has "definite lingering issues" as a result of the offense and wanted and hoped to pursue counseling. Watson's statements about her emotional condition and her desire for counseling are sufficient to support the 10-point score for OV 4. See *People v Armstrong*, 305 Mich App 230, 247-248; 851 NW2d 856 (2014); *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012).

OV 14 is properly scored at 10 points where "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). When scoring this variable, the trial court should consider "the entire criminal transaction." MCL 777.44(2)(a). Watson's and Gibson's testimony that defendant approached the driver's side of the car and directed his co-perpetrator to take Watson's purse supports the trial court's finding that defendant was a leader. In addition, defendant was the individual in possession of the gun, the first person to assault one of the vehicle's occupants, the person giving directions to a co-perpetrator during the offense, and the person who drove the vehicle away. These facts support the trial court's finding that defendant was the leader in this multiple offender situation, and the assignment of 10 points for OV 14.

The trial court assessed 15 points for OV 10 (exploitation of vulnerable victim). MCL 777.40(1)(a). MCL 777.40 provides in relevant part:

(1) Offense variable 10 is exploitation of a vulnerable victim. Score offense variable 10 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Predatory conduct was involved . . . . . . . . . . . . . . . . . . . . . . . 15 points

(b) The offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 points

(c) The offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 points

(d) The offender did not exploit a victim's vulnerability . . . . . . . . 0 points

Defendant contends that the trial court erred in assessing 15 points for OV 10 because there was no evidence that defendant engaged in "predatory conduct" or that Gibson and Watson were "vulnerable" victims. As used in MCL 777.40(1)(a), " '[p]redatory conduct means preoffense conduct directed at a victim or a law enforcement officer posing as a potential victim, for the primary purpose of victimization." MCL 777.40(3)(a). " 'Vulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). In *People v Cannon*, 481 Mich 152; 749 NW2d 257 (2008), our Supreme Court provided eight factors to consider in deciding whether a victim was "vulnerable."[7] However, "[t]he mere existence of one of these factors does not automatically render the victim vulnerable," *Cannon*, 481 Mich at 159, nor does the absence of a factor "preclude a finding of victim vulnerability," *id*, at 158 n 11. Determinative is the "readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c).

The Supreme Court clarified the relationship between predatory conduct and vulnerability in *People v Huston*, 489 Mich 451; 802 NW2d 261 (2011), observing that,

"predatory conduct" . . . does not encompass *any* "preoffense conduct," but rather only those forms of "preoffense conduct" that are commonly understood as being "predatory" in nature, e.g., lying in wait and stalking, as opposed to purely

---

[7] These are:

(1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. [*Cannon*, 481 Mich at 158-159.]

opportunistic criminal conduct or preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection. [*Huston*, 489 Mich at 462 (quotation marks and citation omitted).]

Further, "the victim does not have to be inherently vulnerable. Instead, a defendant's 'predatory conduct,' by that conduct alone (*eo ipso*), can create or enhance a victim's vulnerability." *Id*. at 454. In other words, "[b]y its essential nature, predatory conduct may render *all* persons uniquely susceptible to criminal exploitation and transform all persons into potentially 'vulnerable' victims." *Id*. at 461.

We applied this reasoning in *People v Kosik*, 303 Mich App 146; 841 NW2d 906 (2013), where the defendant challenged the trial court's assessment of 15 points for OV 10 on the grounds that he did not engage in predatory behavior, *id*. at 159, and that his victim, "a healthy adult, sober, alert and working in a fully lit store, that was open to the public, during the afternoon," *id*. at 160, was not inherently vulnerable. The defendant in *Kosik* visited a shoe store, left after finding that the shoes he wanted were unavailable, and then returned five minutes later, after the victim's coworker had gone on break, leaving the victim alone in the shop. *Id*. at 148. The defendant asked the victim to call another store and ask if it stocked the shoe he wanted, and to "double-check to make sure that they were the right shoes that he was looking for." *Id*. "The victim went over to the shoes, knelt down, pulled out the box of the particular shoe defendant wanted, and called another store on a cordless phone to verify that it had the shoe in stock." *Id*. Once the victim stood up, the defendant lunged towards her, grabbed her, took away the cordless phone, and walked her to a back conference room. *Id*. He then tried to convince her that he was just joking, and asked her not to tell anyone about the incident. *Id*. at 149-150. The defendant left the store, and the victim dialed 911. *Id*. at 150.

On appeal, we agreed with the trial court that "defendant engaged in predatory conduct by investigating the [shoe] store and waiting until the victim was alone to strike." *Id*. at 160. We also agreed with the trial court's determination that the circumstances of the offense rendered the victim vulnerable, further noting that, under the *Huston* court's reasoning, the trial court did not need to find that the victim possessed some inherent vulnerability. *Id*. at 160-161.

In the instant case, a preponderance of the evidence exists to support a finding of predatory conduct similar to that in *Kosik*. Defendant's co-perpetrators walked through Watson's parking lot, one nearing the back of Watson's car; they observed that Watson and Gibson were sitting inside a car, with no one else around, in a dark area, late in the evening. They returned a short while later with defendant, armed with a gun. The three offenders crept up on the victims, surrounded the car on both sides, "popped up" suddenly, and committed robbery and carjacking. These facts support a finding that defendant and his cohorts engaged in predatory conduct by investigating the opportunity to strike and selecting ideal conditions of darkness and victims who were confined in a parked car and unable to protect themselves from a sudden intrusion, and then carrying out the offense. Accordingly, the trial court properly assessed 15 points for OV 10.

For the reasons described above, we conclude that, in assigning points to score OVs 3, 4, 10, and 14, the trial court's factual determinations were not clearly erroneous, *Hardy*, 494 Mich at 438, nor did it err in the interpretation and application of the statutory sentencing guidelines, *Morson*, 471 Mich at 255. Accordingly, defendant has not established any scoring errors that would entitle him to resentencing.

-12-

## 2. JUDICIAL FACT-FINDING

In a supplement to his Standard 4 brief, defendant argues that the trial court violated his Sixth Amendment rights by engaging in judicial fact-finding to score OVs 3, 4, 10, and 14, and thereby increasing his sentencing guidelines range on the basis of facts not admitted by defendant or found by a jury. We agree.

In *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), our Supreme Court held as follows:

> [T]he rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), applies to Michigan's sentencing guidelines and renders them constitutionally deficient. That deficiency is the extent to which the guidelines *require* judicial fact-finding beyond the facts admitted by the defendant or found by the jury to score offense variables that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the "mandatory minimum" sentence under *Alleyne*. [*Lockridge*, 498 Mich at 364.]

To remedy this violation, the Court severed MCL 769.34(2) to the extent that it makes a sentencing guidelines range based on judge-found facts mandatory, and held that a guidelines range calculated in violation of *Apprendi* and *Alleyne* is advisory only. *Id.* at 364-365.

The *Lockridge* Court explained that an unconstitutional constraint impairs a defendant's Sixth Amendment right where the facts "admitted by a defendant or found by the jury verdict were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Id.* at 395. The Court held that "in cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error." *Id.* at 397. On remand, the trial court is to follow the procedure adopted in *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2013). *Lockridge*, 498 Mich at 395-396.

*Lockridge* involved an unpreserved error subject to review for plain error affecting substantial rights, whereas the instant defendant preserved his claim of error under *Alleyne* by raising the issue in a motion for resentencing. *People v Terrell*, 312 Mich App 450, 464; 879 NW2d 294 (2015), lv held in abeyance ___ Mich ___ (2016) (Docket No. 152470). Following *Lockridge*, this Court has addressed preserved claims of sentencing error and held that a preserved *Alleyne/Lockridge* error must be reviewed to determine if it qualifies as harmless beyond a reasonable doubt. *Terrell*, 312 Mich App at 464; *People v Stokes*, 312 Mich App 181, 198; 877 NW2d 181 (2015), lv held in abeyance ___ Mich ___ (2016) (Docket No. 152500). Thus, where judicially found facts increased the defendant's minimum sentence guidelines range, the proper remedy is to remand the matter to the trial court to follow the procedure outlined in *Crosby* to determine whether the error was harmless. *Terrell*, 312 Mich App at 464; *Stokes*, 312 Mich App at 198-199.

We agree that the trial court based its assignment of points for OVs 3, 4, 10, and 14 on judicial fact-finding rather than on facts found by the jury or admitted by defendant. OV 3 was scored using judicial fact-finding because none of the offenses of which defendant was convicted required the jury to find that defendant caused a bodily injury requiring medical treatment, MCL 777.33(1)(d), and defendant disputed causing any such injury. Similarly, OV 4 was scored using judicial fact-finding because the jury was not required to find that Watson suffered a serious psychological injury requiring professional treatment. MCL 777.34(1)(a). OVs 10 and 14 also were scored using judicial fact-finding, as the jury was not required to find that defendant engaged in predatory conduct, MCL 777.40(1)(a), or find that he was the leader in this multiple-offender offense, MCL 777.44(1)(a).

The scores for OVs 3, 4, 10, and 14 increased defendant's total OV score from 30 points to 75 points, which in turn changed his placement from OV Level II (20 - 39 points) to OV Level IV (60 - 79 points) on the applicable sentencing grid, resulting in a higher guidelines range. MCL 777.62. Therefore, defendant has demonstrated that an unconstitutional constraint actually impaired his Sixth Amendment rights. *Lockridge*, 498 Mich at 395. Because defendant was sentenced before *Lockridge* was decided, and his placement in OV Level IV cannot be sustained based on facts admitted by defendant or necessarily found by the jury, remand is warranted to determine if the sentencing error is harmless. *Stokes*, 312 Mich App at 198. On remand, the trial court shall determine whether it would have imposed a materially different sentence but for the unconstitutional constraint on its discretion because of the mandatory application of the guidelines at the time of defendant's original sentencing, *Lockridge*, 498 Mich at 397, and we instruct the trial court to follow the *Crosby* procedure outlined in *Lockridge*, *id*. at 398.

## D. COURT COSTS

Relying *People v Cunningham*, 496 Mich 145; 852 NW2d 118 (2014), defendant argues that the trial court erred by imposing $600 in court costs because none of the statutes under which he was convicted specifically authorize an award of costs. Because defendant did not object to the imposition of costs, this issue is unpreserved and review is limited to plain error. *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015).

Defendant's reliance on *Cunningham* is misplaced. The *Cunningham* Court held that "MCL 769.1k(1)(b)(*ii*) provides courts with the authority to impose only those costs that the Legislature has separately authorized by statute." *Cunningham*, 496 Mich at 154. However, the Legislature subsequently amended MCL 769.1k to permit an award of costs "reasonably related to the actual costs incurred by the trial court . . . ." MCL 769.1k(1)(b)(*iii*), as amended by 2014 PA 352. "The amended version applies to all fines, costs, and assessments ordered under MCL 769.1(k) before June 18, 2014, the date *Cunningham* was decided . . . ." *Konopka*, 309 Mich App at 357. The trial court sentenced defendant on May 19, 2014; therefore, the amended statute applies to this case, *id*. at 357, meaning that the trial court's imposition of costs is statutorily authorized. As defendant challenges neither the reasonableness nor the factual basis of the imposed costs, and MCL 769.1k(b)(*iii*), as amended, authorizes the trial court's imposition of court costs, defendant has failed to establish a plain error affecting his substantial rights. *Borgne*, 483 Mich at 196-197.

## E. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Lastly, relying on *Banks v Reynolds*, 54 F3d 1508 (CA 10, 1995) and *Matire v Wainright*, 811 F2d 1430 (CA 11, 1987)[8], defendant contends that his appellate counsel provided ineffective assistance because he declined to raise in the main brief those issues that defendant raised in his Standard 4 brief. In *Banks*, the Tenth Circuit Court of Appeals held that a viable claim for ineffective assistance of appellate counsel could arise under the following circumstances:

> When a habeas petitioner alleges that his counsel was ineffective for failing to raise an issue on appeal, we examine the merits of the omitted issue. Failure to raise an issue that is without merit does not constitute constitutionally ineffective assistance of counsel, because the Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal. Thus, counsel frequently will "winnow out" weaker claims in order to focus effectively on those more likely to prevail. However, an appellate advocate may deliver deficient performance and prejudice a defendant by omitting a dead-bang winner, even though counsel may have presented strong but unsuccessful claims on appeal. [*Banks*, 54 F3d at 1515 (quotation marks and citations omitted).]

In *Matire*, the Eleventh Circuit Court of Appeals held that the defendant established ineffective assistance of appellate counsel where counsel failed to raise a Fifth Amendment issue that arose from an "improper comment [that] was obvious on the record, and must have leaped out upon even a casual reading of transcript." *Matire*, 811 F2d at 1438. The specific issues that defendant contends should have been raised in his appellate counsel's brief relate to Watson's lineup identification, Gibson's identification of defendant in prison garb, and claims of ineffective assistance related to the identification evidence and the failure to present an alibi defense.

We first note that defendant's appellate counsel did raise and address in a supplemental brief filed after the *Ginther* hearing trial counsel's failure to provide an alibi defense. As discussed above, however, we concluded that the trial court did not clearly err in determining that defense counsel's conduct fell within the range of reasonable professional conduct "in light of all the circumstances." See *Gioglio*, 296 Mich App at 22-23. With respect to the issues regarding identification, we concluded above that the circumstances of Watson's and Gibson's identifications of defendant were not unfairly suggestive, and, consequently, that defendant's related claims of ineffective assistance of counsel must fail. In light of the foregoing, defendant has failed to establish that appellate counsel was ineffective for overlooking "obvious" or "dead bang winner" issues.

---

[8] Although lower federal court decisions may be persuasive, they are not binding on state courts. *Rasheed v Chrysler Corp*, 445 Mich 109,123; 517 NW2d 19, n 20 (1994).

For the reasons stated above, we affirm defendant's convictions, but we remand this case to the trial court for further proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola